UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X

VISIONS IN LEARNING INC. and FEED THE
STARVING CHILDREN LLC,                          **MEMORANDUM AND ORDER**

                        *Plaintiff*s,          18-CV-5042(KAM)(LGD)

    -against-

VERITY, INC., ADAM RESIER, XYZ ENTITIES
1-10, and JOHN DOES 1-10,

                      *Defendants*.

-----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiffs Visions in Learning Inc. ("VIL") and Feed the
Starving Children LLC ("FSC") bring the above-captioned action
against Defendants Verity, Inc. ("Verity") and Adam Reiser,
alleging a fraudulent investment scheme and seeking a declaratory
judgment and monetary damages.  Currently before the Court is
Plaintiffs' supplemental, third motion for entry of default
judgment.[1]  (ECF No. 28, Letter, ("Supp. Mot."); ECF No. 11, Motion
for Default Judgment ("Mot.").)  On November 17, 2022, Magistrate
Judge Lee G. Dunst issued a report and recommendation ("R&R"),

---

[1] Judge Bianco, who previously was assigned to the case, granted Plaintiffs'
first motion for default judgment on February 20, 2019.  (ECF No. 16, Order
Granting Motion for Default Judgment.)  Judge Bianco referred the motion to
then-assigned Magistrate Judge Locke for a Report and Recommendation ("R&R") to
determine appropriate remedies.  Judge Locke, for reasons set forth in a R&R,
(ECF No. 20), recommended that the Plaintiffs' motion be denied without
prejudice to renew, and Judge Mauskopf adopted the R&R on February 11, 2021.
(ECF No. 27.)  As discussed below, the issue of monetary damages is the sole
issue before the Court in this Memorandum and Order.

recommending that Plaintiffs' supplemental motion be denied with prejudice. (ECF No. 29, R&R.) Plaintiffs timely filed objections. (ECF No. 30, Objections.) For the reasons set forth below, the Court ADOPTS Magistrate Judge Dunst's well-reasoned R&R and DENIES with prejudice Plaintiffs' supplemental motion.

**BACKGROUND**

### I.   Factual Background

Plaintiffs VIL and FSC commenced this action on September 6, 2018, against Defendants Verity, Reiser, and XYZ Entities 1-10 and John Does 1-10, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.[2] 15 U.S.C. §§ 78j(b), 78t(a); (ECF No. 1, Complaint ("Compl.").) This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

Plaintiff VIL is a New York not-for-profit corporation and the sole member of FSC, a limited liability company. (Compl. at ¶¶ 17-18.) Plaintiff FSC was formerly known as BAD Holdings, LLC.

---

[2] Defendants XYZ Entities 1-10 and John Does 1-10 have never been served or identified. The complaint alleges XYZ Entities 1-10 include "business entities that are affiliated with Verity and Reiser that participated in the transactions alleged herein but are currently unknown to Plaintiffs." (Compl. at 5.) It alleges that John Does 1-10 include "directors, officers, managers, and affiliates of Verity who participated in the transactions alleged herein but are currently unknown to Plaintiffs." (*Id.*) The complaint does not make any allegations against either unnamed party, except to note that "John Doe defendants owe . . . fiduciary duties to Plaintiffs." (*Id.* at 25.) Given that there are no allegations in the complaint against Defendants XYZ Entities 1-10 or John Does 1-10, that Defendants XYZ Entities 1-10 and John Does 1-10 were never served, that the motion for default judgment was requested only against Defendants Verity and Reiser, and that default judgment was granted only against Defendants Verity and Reiser, the Court dismisses Defendants XYZ Entities 1-10 and John Does 1-10 as parties and directs the Clerk of Court to terminate Defendants XYZ Entities 1-10 and John Does 1-10 from the caption of this case. (ECF Nos. 1, 11, 13.)

(*Id.* at ¶ 2.)  Defendant Verity is a corporation, formerly known as Certified Inc. (*Id.* at ¶ 19.)  Defendant Reiser is the president, secretary, treasurer, chief executive officer, and sole directory of Verity.  (*Id.* at ¶ 20.)

In 2017, Verity undertook a private placement of Class B common shares.  (*Id.* at ¶ 2.)  It enlisted professional promoters, including Andy Badolato, to assist in selling the shares.  (*Id.*)  To compensate Badolato, Verity issued 4,000,000 shares of Class B common stock to FSC (then known as BAD Holdings LLC), an entity designated by Badolato.  (*Id.* at ¶¶ 2, 34.)  In connection with the private placement, Verity issued a private placement memorandum, which stated that Class B shares were non-assessable. (*Id.* at ¶¶ 3, 31.)

On January 15, 2018, however, Verity sent a letter to Class B shareholders, including BAD Holdings LLC, notifying them of a capital call.  (*Id.* at ¶¶ 3-4, 37; ECF No. 28-4, Exhibit 2 – Capital Call Letter ("Ex. 2").)  The letter stated that BAD Holdings LLC owed $10,668,000 to Verity (then known as Certified Inc.), calculated from 4,000,000 Common B shares valued at $2.66 per share.  (Ecf No. 1, Compl. at ¶¶ 3-4; ECF No. 28-4, Ex. 2 at 1.)  It also stated that ""ALL NON-CONTRIBUTORS IN THE COMMON B SERIES CALL WILL BE RETURNED TO TREASURY FOR RESALE." (ECF No. 1, Compl. at ¶¶ 3-4; ECF No. 28-4, Ex. 2 at 1.)  BAD Holdings did not

comply with the letter, and Verity revoked its Class B shares. (ECF No. 1, Compl. at ¶¶ 5-6.)

Additionally, Reiser had agreed in 2017 to donate 10,000 Class A shares from his personal shares to VIL.  Instead of doing so, however, Reiser had transferred Class B shares to VIL.  (*Id.* at ¶¶ 11, 55.)  Although Reiser later agreed to exchange these Class B shares for Class A shares, he never did so.  (*Id.* at ¶ 56.)

Based on the above allegations, Plaintiffs asserted the following causes of action: (i) breach of fiduciary duties; (ii) violation of Section 10(b) of the Securities Exchange Act; (iii) violation of Section 20(a) of the Securities Exchange Act; (iv) conversion; (v) breach of contract; (vi) breach of the implied covenant of good faith and fair dealing; and (vii) fraudulent inducement.  (ECF No. 1, Compl. at ¶¶ 55-160.)

## II.  **Procedural History**

Plaintiffs' action, filed on September 6, 2018, was assigned to then United States District Judge Joseph F. Bianco.  (ECF No. 1, Compl.)  Plaintiffs' executed summonses were filed on October 3, 2018.  (ECF Nos. 6-7.)  Plaintiffs requested a certificate of default on November 27, 2018, which was entered by the Clerk of Court based on Defendants' failure to appear or otherwise defend the action.  (ECF Nos. 9-10.)  Plaintiffs filed a motion for default judgment on January 11, 2019, seeking various forms of relief, including (i) a declaratory judgment that the capital call

4

was *ultra vires*, unauthorized, illegal, void and invalid; (ii) a declaratory judgment that FSC was the holder of 4,000,000 Class B shares; (iii) an injunction preventing Defendants from engaging in actions that did not recognize FSC's 4,000,000 shares; and (iv) damages in the amount of $39,996,000, based on "the value of the shares that were given to FSC in consideration of Badolato's efforts on behalf of [Verity] but then later rescinded by [Verity]," plus statutory pre-judgment interest. (ECF No. 11, Mot. at 10-17.)

On February 20, 2019, Judge Bianco granted default but noted that Plaintiffs had "not made evidentiary submissions in connection with the application for a default judgment." (ECF No. 16, Order, at 2.) Accordingly, Judge Bianco referred the motion to Magistrate Judge Steven I. Locke for an R&R "to address the issue of damages and other relief sought by plaintiffs." (*Id.*)

Magistrate Judge Locke recommended that Plaintiffs' request for damages and additional relief be denied without prejudice and with leave to renew. (ECF No. 20, R&R, at 6.) Magistrate Judge Locke noted that Plaintiffs had not supplemented their motion with any documentary evidence despite Judge Bianco's order stating that he could not determine damages due to a lack of evidence. (*Id.* at 5.) Plaintiffs moved for reconsideration on the R&R, stating that they had not been granted an opportunity to present documentation

at a hearing.[3]   (ECF No. 21, Letter Motion for Reconsideration.)
Magistrate Judge Locke denied the motion for reconsideration,
stating that Plaintiffs could instead renew their prior motion and
provide evidentiary submissions at that time.  (ECF Nos. 21, 24.)
Plaintiffs also filed objections to the R&R.  (ECF No. 23,
Objections to R&R.)

On May 21, 2019, the case was reassigned to Judge Roslynn R.
Mauskopf.  Judge Mauskopf addressed Plaintiffs' objections to
Magistrate Judge Locke's R&R, in an order adopting the R&R in its
entirety. (ECF No. 27, Order Adopting R&R.)  Judge Mauskopf agreed
that the Court could not determine whether Plaintiffs were entitled
to relief without evidence.  (*Id.* at 7.)  She stated that it should
be "no surprise to [P]laintiffs that documentary evidence is needed
to support their requests for relief," based on Judge Bianco's
order, and that Plaintiffs were "requesting damages but never
adduced evidence to substantiate the valuation of the shares."
(*Id.*)  Further, Judge Mauskopf noted that Plaintiffs were seeking
"double recovery"; they had requested both a declaration that they
owned 4,000,000 Class B shares *and* financial recompense for the

---

[3] In the motion for reconsideration, Plaintiffs' attorney stated that after the
motion for damages was referred to Magistrate Judge Locke, he twice "contacted
chambers to inquire as to the Court's procedures either for setting a hearing
on relief and damages or for submitting supplemental papers for the Court's
consideration."  (ECF No. 21, Letter Motion for Reconsideration.)  He stated
that "[e]ach time, [he] was directed not to take any action."  (*Id.*)  The record
does not establish contact from Plaintiffs' attorney, such as a letter.  Any *ex
parte* contact or communication between Plaintiffs' attorney and Magistrate Judge
Locke is not otherwise reflected in the record.

value of those shares. (*Id.*) Judge Mauskopf directed Plaintiffs to supplement their motion to clarify the relief sought. (*Id.* at 8.)

Plaintiffs filed a supplemental motion for default judgment, including a declaration, an affirmation, and four exhibits. (ECF No. 28, Supp. Mot. at 1.) Plaintiffs clarified that they seek only monetary relief, "for the monetary value of the shares," in the amount of $41 million. (*Id.*; ECF No. 28-2, Affidavit of Chaim Muskrat, at ¶ 2.)

On July 6, 2021, this case was reassigned to the undersigned and the supplemental motion for default judgment subsequently was referred to Magistrate Judge Dunst. (*See* 9/30/22 Or.) On October 14, 2022, Magistrate Judge Dunst issued an order inviting Plaintiff to provide "any update or supplement" to the motion. (10/14/22 Or.) Plaintiffs did not file additional submissions.

On November 17, 2022, Magistrate Judge Dunst issued an R&R recommending that the Court deny the supplemental motion with prejudice. (ECF No. 29, R&R, at 1.) Magistrate Judge Dunst found that Plaintiffs had "once again failed", after four years, to provide sufficient evidence supporting their claim for $41 million in monetary relief and that the supplemental filings did not establish the damages requested to a "reasonable certainty." (*Id.* at 5.) Magistrate Judge Dunst noted that the Chaim Muskrat affidavit ("Muskrat Affidavit") submitted in support of

Plaintiffs' motion, identifying four supplemental exhibits, was incomplete and did not establish Mr. Muskrat's specific association with Plaintiffs or his personal knowledge of the exhibits. (*Id.* at 6.) The exhibits thus lacked a foundation, and did not provide sufficient information to establish a $41 million value for the shares at issue. (*Id.*) Accordingly, Magistrate Judge Dunst recommended denying Plaintiffs' motion for default judgment with prejudice, given that Plaintiffs had been provided multiple opportunities to present sufficient evidence regarding their alleged damages but had failed to do so. (*Id.* at 7.)

Plaintiffs timely filed objections to the R&R. (ECF No. 30, Objection to R&R.) First, they object to the R&R's "implication" that Plaintiffs had caused unnecessary delay in the case, noting that the four-year delay was due to reassignments to different judges, delay in court orders, and the coronavirus pandemic. (*Id.* at 1.) Second, they object to the R&R's conclusion that the exhibits lack a foundation, arguing that the Muskrat Affidavit provided sufficient authentication. (*Id.*) Third, they object to the R&R's conclusion that the information provided was insufficient to establish the value of the revoked shares, stating the following:

> The damages theory in this case is clear—a certain number of shares of a certain value were taken from FSC. The documents set forth Verity's pricing of those shares—[and] given Verity's failure to respond to books and records demands or participate in this case (which would

have entailed discovery) and the fact that Verity is not publicly traded, this is the best estimate available for the value of the shares . . . The mathematical calculation of $10/share times 4,000,000 shares arrives at a total monetary damages figure for FSC of $40,000,000.

(*Id.* at 2.)  Plaintiffs further argue that their exhibits suffice to establish that FSC's shares were revoked.  (*Id.* at 2-3.) Finally, they object that the motion should not be denied with prejudice when no evidentiary hearing has been held.  (*Id.* at 3.)

Plaintiffs do not reveal what evidence would be presented at an evidentiary hearing that could not have been submitted in support of their third motion.  Nor do Plaintiffs explain why detailed affidavits with supporting documents were not submitted in support of their motion.

## **LEGAL STANDARD**

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  If a party makes specific and timely written objections to a magistrate judge's findings and recommendations, the Court conducts a *de novo* review of "those portions of the report . . . to which objection is made."  *Id.*; *see also* Fed. R. Civ. P. 72(b)(3).  "Where no objection to a Report and Recommendation has been timely made, the district court need only satisfy itself that there is no clear error on the face of the record."  *Minto v. Molloy Coll.*, No. 16-cv-276 (KAM), 2021 WL

804386, at *1 (E.D.N.Y. Mar. 3, 2021) (internal quotation marks and citation omitted). Moreover, where "the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error." *Id.* (internal quotation marks and citations omitted).

On a default judgment motion, the defendant is deemed to have admitted all well-pleaded factual allegations in the plaintiff's complaint, except for claims relating to damages. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metrofoundation Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012); *see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Instead, once default is established, the plaintiff bears the burden of showing an entitlement to recovery. *Windward Bora, LLC v. Brown*, No. 21-CV-03147 (KAM), 2022 WL 875100, at *3 (E.D.N.Y. Mar. 24, 2022) (citing *Danser v. Bagir Int'l*, 571 F. App'x 54, 55 (2d Cir. 2014) (summary order)).

A district court must ensure that the plaintiff has proved the amount of damages to a "reasonable certainty." *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). When damages are "neither susceptible of mathematical computation nor liquidated as of the default," courts usually require "an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Greyhound*, 973 F.2d at 158. Courts have

discretion, however, under Federal Rule of Civil Procedure
55(b)(2), to "determine whether an evidentiary hearing is
necessary or whether to rely on detailed affidavits or documentary
evidence." *Windward Bora,* 2022 WL 875100, at *3 (internal
quotation marks and citations omitted). Either way, a court cannot
"just accept [a plaintiff's] statement of the damages."
*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,
Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997). "Proof
of damages must therefore be based on admissible, authenticated
evidence." *Trustees of Loc. 522 Pension Fund v. Tri-Boro & Rest.
Supply Co.*, No. 12-CV-0163 (KAM), 2013 WL 685377, at *3 (E.D.N.Y.
Feb. 24, 2013) (citations omitted); *see also Tamarin v. Adam
Caterers, Inc.*, 13 F.3d 51, 54 (2d. Cir. 1993); *House v. Kent
Worldwide Mach. Works, Inc.,* 359 F. App'x 206, 207 (2d Cir.
2010)(summary order) (interpreting a reasonable certainty to mean
that "even when the defendant defaults and is not present to
object, damages must be based on admissible evidence").

## DISCUSSION

Upon *de novo* review, the Court agrees with Magistrate Judge
Dunst's well-reasoned R&R that the Court cannot determine the
amount of damages to a "reasonable certainty." *Credit Lyonnais*,
183 F.3d at 155. Prior to the supplemental motion, Plaintiffs
provided no documentation to establish their entitlement to $41
million in damages beyond the complaint and memorandum in support

11

of their motion for default judgment.  In their supplemental motion, Plaintiffs submit only a cover letter, a declaration by Plaintiffs' attorney, Michael B. Ershowsky ("Ershowsky Declaration"), the Muskrat Affidavit, and four exhibits totaling eight pages.  (ECF Nos. 28—28-6.)  The Ershowsky Declaration clarifies that Plaintiffs seek as relief "only the monetary relief demanded in the Complaint . . . for the monetary value of the shares," which the Muskrat Affidavit asserts, without adequate evidentiary support, is $41 million.  (ECF No. 28-1, Ershowsky Declaration, at 1; Muskrat Affidavit at 4.)

The Court again is prevented from determining damages to a reasonable certainty because the exhibits that relate to the value of the shares are not properly authenticated and thus not admissible.  Three of the four exhibits concern the number and the value of the shares: Exhibit 1, four pages of Defendants' private placement memorandum; Exhibit 2, Defendants' capital call letter; and Exhibit 4, a statement of securities holdings from Transfer Online.[4]  (ECF Nos. 28-3, Exhibit 1 ("Ex. 1."); Ex. 2; ECF No. 28-6, Exhibit 4 ("Ex. 4").)  The Ershowsky Declaration states only that Mr. Ershowsky is "fully familiar with the facts and circumstances underlying [the] proceeding" and that Plaintiffs' request for

---

[4] Exhibit 3, the only exhibit that does not refer to the value or number of the shares at issue, documents BAD Holdings LLC's name change to FSC, certified by the Wyoming Secretary of State.  (ECF No. 28-4, Exhibit 3, ("Ex. 3").)  Exhibit 3 therefore is properly authenticated under Federal Rule of Evidence 902(1).

damages is "supported by documentary and further testamentary evidence set forth in the [Muskrat Affidavit]." (ECF No. 28-1 at 1.) These statements are insufficient to authenticate the exhibits under Federal Rule of Evidence 901. *See Trustees of Loc. 522 Pension Fund*, 2013 WL 685377, at *4 (finding that affidavit by attorney alleging only that he was "familiar with the facts of [the] case" was too conclusory to establish damages). Further, Plaintiffs have not provided any document establishing when FSC allegedly was issued 4,000,000 Class B shares; establishing the value of the 4,000,000 Class B shares at the time they were issued to FSC; or establishing the difference in value between Class A and Class B shares.

Although the Muskrat Affidavit provides more detail than the Ershowsky Declaration, it too fails to lay the foundation for admissible evidence. It states that Muskrat is "an authorized representative for the plaintiffs in this action," but does not establish (1) Muskrat's first-hand knowledge of the facts he attests to, (2) whether he was a custodian of the relevant records, or (3) if he reviewed records supporting the facts attested to. (Muskrat Affidavit at 1); *see also Trustees of Loc. 522 Pension Fund*, 2013 WL 685377, at *4 (finding there was "no indication that [plaintiff attorney's] conclusory statements regarding plaintiffs' damages [were] based on his first-hand knowledge or such other source such that the contents of such statements would be

13

admissible in evidence" (alterations, internal quotation marks, and citations omitted)). Nor does Mr. Muskrat submit authenticated records in support of the facts asserted. (Muskrat Affidavit at 1.)

Plaintiffs object to Magistrate Judge Dunst's conclusion that the exhibits lack a proper foundation on the ground that evidence may be authenticated by "testimony that an item is what it is claimed to be" under Federal Rule of Evidence 901(b)(1). Fed. R. Evid. 901(b)(1); (ECF No. 30 at 1.)  Rule 901(b)(1), however, requires "[t]estimony of a witness *with knowledge*."[5] Fed. R. Evid. 901(b)(1) (emphasis added).  Courts regularly find that "[t]he absence of an affidavit by a person with actual knowledge of the facts . . . deprives the court of the ability to make an independent assessment of the damages to be awarded." *Trustees of Loc. 522 Pension Fund*, 2013 WL 685377, at *4; *see also Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs Loc. 15, AFL-CIO v. Midwest REM Enters., Inc.*, No. 20-CV-05896 (KAM), 2021 WL 2809794, at *6 (E.D.N.Y. July 6, 2021) (finding insufficient authentication where affidavits by plaintiff's attorney and fund administrator did not testify to personal knowledge or to reviewing records); *Int'l Bhd. of Elec.*

---

[5] It is true that Muskrat's name is on Exhibit 4, a statement of holdings stating that Plaintiff VIL and Muskrat have 10,000 shares of Verity (then known as Certified Inc.).  (ECF No. 28-6.)  But that does not establish Muskrat's knowledge as to Exhibits 1 and 2, which Plaintiffs assert describe the value of the shares.  (ECF Nos. 28-3, 28-4.)

*Workers Loc. 106 v. Marker Elec. Contracting, Inc.,* No. 16-CV-932
(FPG), 2018 WL 4327815, at *7 (W.D.N.Y. Sept. 10, 2018) (requiring
"affidavits from individuals with actual knowledge of the facts
. . . and the underlying records"); *LaBarbera v. Rockwala Inc.*,
No. 06-CV-6641 (CPS), 2007 WL 3353869, at *5 (E.D.N.Y. Nov. 8,
2007) (adopting report and recommendation to deny default
judgment) (noting that affidavit "makes no assertion" regarding
being "the custodian of [relevant] records or otherwise
responsible for maintaining them").

   Even if the Court assumes the documents are properly
authenticated, on *de novo* review, the Court agrees with Magistrate
Judge Dunst that the exhibits do not establish to a "reasonable
certainty" that Plaintiffs are owed $41 million in damages.
Magistrate Judge Dunst noted that Exhibit 2 contains "only select
pages from what appears to be a larger document," and that the few
other exhibits do not provide sufficient support to find to a
"reasonable certainty" the substantial sum claimed by Plaintiffs,
especially given the lack of documentary evidence that Defendants
ever actually revoked Plaintiffs' shares or promised to exchange
Class A shares for Class B shares.  (ECF No. 29 at 6.)

   Plaintiffs object to Magistrate Judge Dunst's finding that
the exhibits do not establish the value of the shares at issue to
a "reasonable certainty."  (ECF No. 30 at 3); *Credit Lyonnais*, 183
F.3d at 155.  They assert that the Court is required to accept the

factual allegations in the complaint as true, including the allegation that Defendants illegally revoked Plaintiffs' shares. (*Id.*)

Because defendants are "deemed to have admitted all well-pleaded factual allegations" in a complaint upon entry of default judgment, *Windward Bora*, 2022 WL 875100, at *3, the Court must assume liability on behalf of the Defendants, including that they (1) wrongfully revoked Plaintiffs' shares and (2) provided VIL with 10,000 Class A, rather than Class B, shares. The Court, however, does not assume that factual allegations related to damages are true, including the alleged difference in value between Class A and Class B shares. *See Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234. Instead, the Court maintains "an independent obligation to determine whether damages to be awarded are appropriate." *LG Cap. Funding, LLC v. M Line Holdings, Inc.*, 422 F. Supp. 3d 739, 746 (E.D.N.Y. 2018). That obligation "does not change simply because one party is in default." *Id.*

This Court, like Magistrate Judge Dunst, cannot conclude with reasonable certainty that Plaintiffs are entitled to $41 million in damages. In support of establishing the value of the shares, Plaintiffs have provided only the cover page, pages 7 and 8 (titled "Summary of the Offering"), and page 41 (titled "Capitalization Tables") of the private placement memorandum. (Ex. 1 at 2-5.)

16

Although Plaintiffs need not submit needlessly cumulative information, it is not clear from Plaintiffs' submission why only a summary of the purported terms of the private placement was provided in support of their motion, rather than the full terms. (*Id.*)  As the Court noted above, Plaintiffs also have not provided any document establishing when FSC allegedly was issued 4,000,000 Class B shares or establishing the value of the 4,000,000 Class B shares at the time they were issued to FSC.  As also noted above, Plaintiffs have not established to a reasonable certainty the difference in value between Class A and Class B shares, such that VIL suffered a loss from being granted Class B shares instead of Class A shares.

Finally, even if the Court found that Plaintiffs' damages allegations were sufficiently supported by evidence, Plaintiffs' submissions do not yield $41 million in damages.  The Muskrat Affidavit asserts that Plaintiffs are entitled to $41 million. (Muskrat Affidavit at 1.)  It calculates that FSC suffered a loss of 4,000,000 shares at $10 per share, yielding $40,000,000 in damages. (*Id.* at 2.)  It also calculates that VIL suffered a loss of 10,000 shares, at $10 per share, yielding $100,000 in damages. (*Id.*)  The total calculation provided by Plaintiffs' inadequately documented submissions amounts to $40,100,000 in damages. Plaintiffs have not established another loss justifying the

remaining $900,000 requested.[6]

Accordingly, the Court is unable to determine the damages amount to a "reasonable certainty" based on the submitted documentary evidence. *Credit Lyonnais*, 183 F.3d at 155. Judge Bianco granted Plaintiffs' initial motion for default judgment on February 20, 2019. "[A] default judgment establishes *whether* a plaintiff suffered damage; it does not, however, establish the *amount* of those damages." *Greyhound*, 973 F.2d at 161 (Altimari, J., concurring). Judge Bianco noted in his order that Plaintiffs had "not made evidentiary submissions" and thus issued a referral "to address the issue of damages and other relief sought by plaintiffs." (ECF No. 16, Order, at 2.) Since then, two district court judges, including this Court, *and* two magistrate judges have been unable to determine damages to a "reasonable certainty," despite granting numerous opportunities to Plaintiffs to supplement their submissions. Courts have denied damages awards where plaintiffs repeatedly fail to establish damages to a reasonable certainty. *See Louis Hornick & Co. v. Darbyco, Inc.*, No. 12-CV-5892 (VSB) (DCF), 2015 WL 13745787, at *1 (S.D.N.Y. Aug. 19, 2015), *report and recommendation adopted*, No. 12-CV-5892 (VSB), 2015 WL 9478239 (S.D.N.Y. Dec. 29, 2015) ("Plaintiff failed to establish damages with reasonable certainty, despite having

---

[6] Plaintiffs request interest on both losses. (ECF No. 28-3.) They do not provide calculations, however, to establish an interest payment of $900,000.

been advised of the inadequacy of its submissions and directed to supplement its inquest submissions . . . [the Court] decline[s] to award Plaintiff any damages."); *see also Garden City Boxing Club, Inc. v. Borinquen 444 Ass'n*, No. 05-CV-3691 (ARR) (RML), 2008 WL 842452, at *3 (E.D.N.Y. Mar. 28, 2008) (adopting report and recommendation) ("Since it is clear that plaintiff did not take advantage of the opportunity it was given to cure the glaring deficiencies in its first motion for default judgment, I recommend that its current motion be denied with prejudice and that no damages be awarded.").

Plaintiffs object to Magistrate Judge Dunst's recommendation that their supplemental motion be denied with prejudice, arguing that Magistrate Judge Dunst never held an evidentiary hearing and that if "an in-person inquest been held, the various issues . . . could have been addressed." (ECF No. 30 at 3.)  Plaintiffs do not reveal what evidence would have been presented at a hearing to establish their damages. (*Id.*)  Plaintiffs cite to *Edelman Arts, Inc. v. Spoelstra*, in which a judge in the Southern District of New York declined to adopt a R&R recommending that no damages be awarded: the judge found that the magistrate judge did not take all "necessary steps to establish damages with reasonable certainty" because it had not held an evidentiary hearing.  No. 17-CV-4789 (JGK), 2020 WL 2131351, at *5-6 (S.D.N.Y. May 5, 2020) (quoting *Transatlantic Marine*, 109 F.3d at 111). *Edelman* cites to

19

*Transatlantic Marine*, in which the Second Circuit held that the district court "failed to take the necessary steps to establish damages with reasonable certainty" where it held no evidentiary hearing but instead accepted the plaintiff's statement of damages. 109 F.3d at 111.  In *Transatlantic Marine*, the Second Circuit acknowledged that "the District Court may not have been obligated to hold an evidentiary hearing" if it could decide damages based on documentary evidence.  *Id.*  The specific issue addressed by the Second Circuit was that the district court had "simply accepted at face value" the plaintiff's unsupported statement regarding damages, which "did not satisfy the court's obligation to ensure that the damages were appropriate."  *Id.*

Here, by contrast, this Court, along with Magistrate Judge Dunst, has thoroughly reviewed Plaintiff's evidentiary submissions prior to concluding that it is unable to determine damages to a "reasonable certainty."  *Credit Lyonnais*, 183 F.3d at 155; *see also Garden City Boxing Club*, 2008 WL 842452 at *2 (approving an award of zero damages without holding an evidentiary hearing). Given that courts have discretion under Federal Rule of Civil Procedure 55(b)(2) to "determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence," *Windward Bora,* 2022 WL 875100, at *3 (internal quotation marks and citations omitted), this Court may determine a damages award without holding an evidentiary hearing.

Accordingly, on *de novo* review, the Court adopts the R&R's recommendation to deny with prejudice Plaintiffs' supplemental motion for monetary damages.

## CONCLUSION

For the forgoing reasons, Plaintiffs' supplemental motion for monetary damages is denied with prejudice.  The Clerk of Court is respectfully directed to enter a judgment in favor of Plaintiffs, with an award of $0 in damages, and close this case.

**SO ORDERED**

Dated:     January 30, 2023
           Brooklyn, New York

**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York